Would you please introduce yourselves when you begin and let me know how much time the appellant wants to reserve for rebuttal. Let's proceed with the case. Good morning, your honors, counsel, and mayors of the court. My name is Michael Gomez from the Office of the State Appellate Defender, and I'm here on behalf of my client, Alec Foy, and I'd like to reserve three minutes for rebuttal. Although we raised two issues in this appeal, today I would like to focus on the first issue, whether the state committed prosecutorial misconduct at closing argument. However, if your honors have any questions about the excessive sentencing issue, I am prepared to answer those as well. Your honors, the jury's decision in this case came down to one crucial question. Why did Mr. Foy shoot Kenny Miller? Someone who was like family to him, someone who was only he didn't have any problems, or a history of violence, or animosity, or anything. Why suddenly, on December 23rd, 2013, after attending the funeral of Mr. Foy's own sister, did he shoot his niece's fiance? Mr. Foy testified that he shot Miller in self-defense, that he had a reasonable belief in the need to use deadly force because he thought he was going to be killed himself. If the answer to that question was so clear, and the evidence was so overwhelming, then the prosecutors could have relied on the precise testimony and evidence that was introduced. Instead of doing that, the prosecutors misstated Mr. Foy's own testimony, mischaracterized the testimony of the medical examiner, and misrepresented Mr. Miller's law-abiding nature. These exaggerations hit at the very core question in this closely balanced case. Why did Mr. Foy shoot, basically, his family member? The prosecutors' misstatements ensured that they could reject Mr. Foy's claim of self-defense and find him guilty of first-degree murder. As a result, Mr. Foy was denied a fair trial. As an initial matter, while Mr. Foy recognizes the split in authority regarding the standard of review, this court should follow the Illinois Supreme Court's decision in People v. Wheeler and consider this issue under a de novo standard of review. And notably, the state also acknowledges that the standard of review is an open question but does not advocate either standard. The determination of whether the prosecutor misstated the evidence or mischaracterized testimony does not require any credibility determination or in-the-moment assessment to decide whether a statement is true or false, whether it constitutes prosecutorial misconduct or not. If anything, it would depend on the credibility of the prosecutor making the statement. And in this case, the state has already conceded that the prosecutor misstated the evidence at least once in an effort to paint Mr. Foy as a vicious, malicious killer of someone he had no problems with, rather than someone who was defending his own life. Counsel, if I could interrupt you for a second, but those comments or statements were objected to and the court sustained the objection and it admonished the jury to, again, closing arguments is not evidence for them to rely on their recollection of the evidence. Yes, Your Honor, well, counsel only objected to some of these comments, not all of them. The court did give instructions that closing arguments were not evidence, but that does not relieve the prosecutor of his duty to base his closing arguments based on the evidence, on the testimony admitted at trial and only reasonable inferences therefrom. Just a general instruction that closing arguments are not evidence is not enough. As the people, as the Illinois Supreme Court stated in People v. Wheeler, there is an intolerance to prosecutorial misconduct in misstating the evidence and mischaracterizing the testimony. And here, the state has already admitted there was at least one misstatement of the evidence. In Mr. Foy's testimony where the state said that he had five guns and gave two to his mother and the state tries to minimize this by calling it an inadvertent misstatement, but it wasn't. The state argues in its brief that this court should look at closing arguments as a whole and it should. For this court would see that the prosecutor here consistently sought to paint Mr. Foy as a gun-toting hothead ready to use it at any moment. That is why the prosecutor, speaking from the perspective of Mr. Foy, as if for accounting testimony, misstated him by saying that he got the gun and carried it everywhere. That is not what Mr. Foy said. That's why the prosecutor told the jury that guns are bad and Mr. Foy could have just punched Miller, but instead he shot him. And that's why the prosecutor mischaracterized Foy's testimony about why he went to Madison after the shooting. Those characterizations were all made for the sole purpose of getting the jury to reject Mr. Foy's claim of self-defense. The prosecutor didn't just misstate Mr. Foy's testimony. He also aimed to undermine that testimony by mischaracterizing the medical examiner's testimony. The prosecutor claimed that the medical examiner said Miller was falling when one shot entered his face, saying that was the only way he could get shot like that. That was not the medical examiner's testimony. In fact, the examiner testified that the bullet's downward trajectory could have been the result of a height difference between the shooter and the victim. One such difference could occur, as Mr. Foy testified, when Miller lunged at him. The prosecutor also repeatedly claimed that the medical examiner said Mr. Foy shot Miller in the back, at one point saying the last shot was in the mid-back. But again, that is not correct. In fact, the examiner testified twice. It was not a direct back-to-front trajectory. He said the bullet came from the left side, slightly back. Finally, the prosecutor told the jury that in one shot, Miller was dead, and emphasized that Mr. Foy shot Miller in the back not once, but twice. These comments had no basis in the evidence. In fact, the medical examiner testified he did not even know the order of the shots. Moreover, the prosecutor's statement is contradicted by the state's own witness, Ashton Evie, who testified that it was not until the third shot that Miller fell on the floor. These were not innocuous mischaracterizations. The number of shots and the location of the shots bear directly on the central question in this case. So what about their argument that these misstatements were inadvertent, they weren't, they were not intentional, and they didn't intend to mislead or prejudice in this case? Well, Your Honor, the intent of the prosecutor is not the question before this court. It's whether the jury's verdict could have been based in part on the prosecutor's mischaracterization. So even if inadvertent, and or even if intentional, the fact that the prosecutor misstated the evidence, mischaracterized testimony, and finally, misled the jury into believing Miller could not have been the initial aggressor and could not have been armed because he was a helpful family man who had been reformed 2007 conviction for aggravated vehicular hijacking with a firearm. The prosecutor's intent in making those misstatements and mischaracterizations are not an issue. It's whether those contributed to the jury's verdict. And they did. Mr. Gomez, I hope I don't break up when I'm, my internet connection is unstable. But isn't it a prosecutor allowed to argue, not only from the direct evidence, but from reasonable inferences that can be drawn from that evidence? I mean, I read the record, and I can't remember what one of the, but there were two different witnesses, or at least one that said the defendant said, you know, want to show him his gun and said, I've got mine on me. I'll put you down with it. And just somebody else, he said, I keep mine. I mean, from that, it seems to me a reasonable inference that he's saying, I carry my gun with me all the time when he says, I keep mine. The other thing with the doctor, the doctor did say that, well, it didn't go straight front to back, but he has it going in the left back, both shots, one near the armpit, I think, and one where the arm meets the shoulder. Those are in the back, counsel. I'm having a hard time understanding how you can say that these are misstatements of the evidence. And you also say he's trying to point, paint the victim as some great guy. There was a witness. Again, I don't remember who they were, but who said he was a family man, and he was helpful, and he was serving people, and he was kind. And that's what the evidence showed. So I know there was a misstatement. That's the five guns and the two guns instead of $500 and $200. But I am at a loss to find out how you can characterize these as misstatements of the evidence when there's certainly some evidence from which the prosecutor could make these arguments. Yes, Your Honor, all of those were conclusions that the jury could potentially draw through a proper assessment of the evidence. The problem here is that the prosecutor's mischaracterizations were not reasonable inferences from the evidence. The prosecutor did not say that Mr. Miller was shot from the left side, slightly back where the armpit, the left armpit or where the arm meets the shoulder. The prosecutor said he was shot directly in the back twice. Now, these go toward not whether Mr. Foy shot Miller, because that's not in question. The question before the jury is whether Mr. Foy shot Mr. Miller in self-defense. And all of these mischaracterizations hit at that very core question and were all prejudicial. Regarding Mr. Miller's background or the prosecutor's suggestion that he was a law-abiding family man, we're not saying that he was not helpful on the day of the shooting. But the prosecutor importantly said, and I'll quote, after defense counsel raised in his closing argument the fact that Mr. Miller did have a conviction in 2007 for aggravated vehicular hijacking with a firearm, the prosecutor came back in rebuttal and they painted it as a youthful indiscretion and that Miller had been a reformed man and had led a law-abiding life since then. That disingenuously misled the jury into believing that proposition. But the fact is, Mr. Miller was incarcerated that entire time. So when the prosecutor said, did he carry a gun when he was 19, 20, 21, 22, 23, 24, 25? He was 18 years old when he was convicted of carrying the gun. He's 25 now. He's moved on from all that. He was actually still on parole at the time of this shooting. So this is not to say he's a bad person, but it paints him in a completely different light. And the fact that the prosecutor said he's moved on from that suggests that he's a reformed individual, which he could have been. But the view or the misleading the jury into believing that this person could not have been an initial aggressor, thus undermining Mr. Foy's claim in self-defense, which again, is the only question before the jury. And all of the prosecutor's misstatements and mischaracterizations hit at that very question. And the evidence on that question was not overwhelming. So Your Honor pointed out some evidence that the jury could have used to conclude that Mr. Foy was not justified, but the evidence on that question is not clear and it's not overwhelming. The jury has to consider all of the evidence. And Mr. Foy testified under oath that he confronted Miller about inappropriately touching an eight-year-old girl in the family, which another family member had brought to his house and other family members had asked Miller to leave the house. Now the state presented no evidence that Mr. Foy lied about that. On the contrary, the state's own witnesses corroborated it. Trey Jordan and Latoya Brown both testified that Aunt May and Miller had a heated conversation in the house and Jonathan Campbell, who was 14 years old at the time of trial, confirmed that he saw Mr. Foy and Miller were standing chest to chest, having a heated argument in the kitchen about the situation involving the little girl. Mr. Foy testified that his mother, Pearlie, came into the kitchen to calm them down. Jonathan Campbell testified to the same. And then Mr. Foy testified that when the argument resumed and he told Miller to leave, Miller threatened to kill him and reached for the same area Miller had padded earlier in the day to indicate he was carrying a gun. And Mr. Foy said he feared for his life and shot Mr. Miller in self-defense. At first, your time has expired. Will you wrap up, please? Yes, Your Honor. We just ask that this course reverse his conviction and remember the trial. Thank you. I give you three minutes for rebuttal. Good morning, Your Honor. May it please the court opposing counsel. My name is Paul Wysicki and I'm here representing people of the state of Illinois. Initially, defendant concedes that the evidence was more than sufficient to allow the jury to draw the conclusion that defendant murdered the victim, not that he acted in self-defense. And as the court has already, Justice Lampkin pointed out, the evidence supports the statements made by the prosecutor, save one, either directly or based on a reasonable inference. And an inference is reasonable, even an inference drawn by a prosecutor is reasonable, even if it is not favorable for the defendant. A defendant is presumed innocent. A defendant is not presumed credible. So both the prosecutor and the jury ultimately can draw inferences from the evidence negative to the defendant's position at trial. Here, the one misstatement that we do have was clearly inadvertent. As noted, the defendant claimed that he brought $500 with him and gave $200 to his mother. Prosecutor misstated and you said guns instead of dollars. That type of statement was not reasonably likely to prejudice or confuse the jury because the jury clearly heard the evidence that showed that there was one gun involved and that was the gun defendant used, admittedly on his own part, to shoot the victim four times. There was no testimony. There's nothing to suggest that the victim himself was packing a gun. In fact, the testimony was that he was unarmed. Defendant's niece, Tammy, the fiance of the victim, testified that she had been hugging the victim all day and certainly would have noticed the firearm if he indeed had one. That was strong evidence contradicting defendant's ultimate testimony. And the testimony that was unfavorable to the defendant, the testimony that supported directly or by inference the prosecutor's statements during closing argument came from defendant's family and friends, people that knew the defendant well and like the defendant were there grieving for a relative. The evidence was very clear that defendant, again by his own admission, shot the victim. Not only shot him four times. The victim, the evidence showed, was unarmed. The evidence also showed clearly, the ME medical examiner testified that two of the four shots were to the decedent's left upper back. That's exactly what the medical examiner testified. So to argue that, well, the victim wasn't shot in the back is simply not supported by the evidence. On the other hand, the prosecutor's comment that the victim was shot in the back was wholly consistent with the testimony of the medical examiner. Also, I have a question regarding the shots. In closing argument, also the prosecutor indicated that the first shot had killed the victim, which the defendants here say that that was not accurate. That was a total misstatement and prejudicial because there was still a contention that he was, the defendant was still trying to exercise his right to self-defense. Well, there was the allegation of self-defense, which I think was wholly incredible based on the totality of the evidence. Now, separate and apart from that, whether, I think again, because we have to view argument in context, as we argue in our brief, and I think the evidence supports, the prosecutor was not trying to say this particular shot was the fatal shot. Nobody testified to which particular shot was the fatal shot or in which order a safe defendant, the shots likely occur. The defendant's testimony as to the order of the shots didn't match up with the medical examiner testimony as to points of injury. All that being said, I think the point the prosecutor was trying to make and the point the prosecutor did make was that once the defendant decided to start shooting, it was over. This man was going to die because he didn't shoot him once. He didn't shoot him twice. He didn't shoot him three times. He shot him four times. But wasn't the testimony counseled that after the victim was shot once that the defendant thought he was reaching for a weapon and that was the reason that he shot him a second time? Well, I think the testimony was he initially shot. The first shot was because he thought the victim was reaching for a weapon and he shot him in an arm. Then he said the victim started walking away and I think turned as if he was going to lunge at him. If I recall the order correctly, and that's when he said, well, the second shot was in the chest. And then he said the third shot, I believe the defendant claims was the face shot to the face. And then the defendant claimed that the fourth shot was an accident while he was administering CPR. And luckily it had a CPR mask with him in his wallet. The evidence doesn't support that, particularly the latter point, because the testimony was that within 10 seconds after the shooting stopped, the defendant was out the door and on his way to Wisconsin. So the defendant told the jury a version of events that they were free to reject based on the evidence. And that same evidence supported each of the statements made by the prosecutor either directly or by way of reasonable inference. Again, save one about where the prosecutor mixed up guns for dollars. But as noted, the trial court properly and repeatedly instructed the jury, arguments are not evidence. Listen carefully to the arguments. And if one of the lawyers says something about the evidence that you disagree with, reject it. It's not evidence. Use your memory recollection of the evidence. So ultimately, while defendant is entitled to a fair trial, he's not entitled to a perfect trial. Here, that one inadvertent misstatement, maybe that was imperfect, but it didn't render the trial unfair. The other issue defendant must confront, and the other hurdle he can't clear, is that he's seeking plain error review on these comments. And plain error review requires a showing that the evidence was closely balanced. And it was not here. Again, defendant shot, admittedly, by his own admission, shot the victim four times. Two of those shots were in the back. And the evidence shows that the victim was unarmed. The evidence against the defendant was not closely balanced. It was quite strong. And for those reasons, we ask that the judgment of conviction be affirmed. Thank you, counsel. Rebuttal. Your Honor, first I'd like to clarify something that the state misstated. Mr. Foy has not, we have not conceded that the evidence is more than sufficient to convict, to sustain Mr. Foy's conviction. Let's not get confused. This is not a sufficiency claim. It's a prosecutorial misconduct claim. And whether the prosecutor's misstatements and mischaracterizations contributed to the conviction, which we maintain they did. The state makes much of, or doesn't make much of this inadvertent misstatement that all of the prosecutors said guns instead of money. When he said five guns instead of, and gave two to his mother. Well, that is a huge difference. Gun, the gun was used to commit the shooting in this case. That was the central question before the jury. Whereas money was used to pay for Mr. Foy's sister's funeral that same day. While the prosecutors can rely on reasonable inferences from the evidence to make their arguments before the jury, they must be reasonable inferences from the evidence. That does not give the prosecutor free reign to take any morsel, any word that in the testimony, and then say whatever they want. As the Illinois Supreme Court said in People v. Wheeler, again, we affirm our intolerance of prosecutorial misconduct. Now the state says that Mr. Foy is entitled to a fair trial, not a perfect trial. What Mr. Foy is entitled to is the state basing its arguments on the evidence as admitted and presented at trial. And finally, for the issue of plain error, as the state makes clear both here today and in its brief, its plain error argument, a closely balanced argument, is very conclusory. There are no details. As we have explained today, the evidence and the sole question before the jury was not overwhelming. The jury could have assessed the evidence however it wanted. But here it was influenced by the prosecutor's misstatements and mischaracterizations. And finally, the evidence does not have to be closely balanced for this court to review this issue of plain error because it also constitutes a second prong of plain error because it affected Mr. Foy's substantial rights. So for the reasons we've said here today and in our briefs, we ask that this court reverse Mr. Foy's conviction and remand for a new trial. Thank you. Thank you, counsel. This matter will be taken under consideration and the order or opinion will be submitted in due order. This matter is concluded.